The Honorable John H. Chun

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

KIM SNELL,

      Plaintiff,

   v.

THE STATE OF WASHINGTON;
DEPARTMENT OF SOCIAL AND
HEALTH SERVICES, JUDITH A.
FITZGERALD and UNA I. WILEY,

      Defendants.

NO.  3:20-cv-06028-JHC

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR:
MARCH 24, 2023

## I.      INTRODUCTION

Defendants State of Washington, its agency Department of Social and Health Services (DSHS), Judy A. Fitzgerald and Una I. Wiley, submit this motion for summary judgment in their favor. Plaintiff Kim Snell alleges seven claims against the Defendants. Dkt. 1:15. She asserts 42 U.S.C. §1983 claims against Defendants Ms. Fitzgerald and Ms. Wiley alleging each of them violated her constitutional rights to free speech and to petition the government. Dkt. 1:15. Ms. Snell asserts three state statutory claims alleging all defendants violated her rights under the Washington Law Against Discrimination, RCW 49.60 *et seq*, as supplemented by RCW 42.040 *et seq*.; used her

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C

1

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

name in violation of RCW 63.60.050 *et seq*; and violated her rights as a whistleblower under RCW 42.40 *et seq*. Dkt. 1:15. She asserts a claim against Defendant DSHS alleging the negligent hiring and retention of Ms. Wiley and Ms. Fitzgerald. Dkt. 1:15. Finally, Ms. Snell alleges Ms. Wiley misappropriated her identity. Dkt. 1.15.

Defendants bring this summary judgment motion on the grounds that Ms. Snell fails to state claims for which relief can be granted under any of these theories. The undisputed material facts show that Ms. Snell fully exercised her right of free speech and to petition and that Defendants did not violate any state laws or engage in any illegal actions in managing Ms. Snell's work at DSHS.

## II.    EVIDENCE RELIED UPON

1.      Declaration of Judy Fitzgerald ("Fitzgerald Decl.") and attachments;

2.      Declaration of Una Wiley ("Wiley Decl.") and attachments;

3.      Declaration of Amber Wright ("Wright Decl."); and

4.      Declaration of Michelle Hansen ("Hansen Decl.") and attachments.

## III.    MEMORANDUM OF POINTS AND AUTHORITIES

### A.    Statement of Facts

#### 1.    Summary of Parties

Plaintiff Kim Snell first began working for the Washington State government in April 2013 when she joined the DSHS Division of Child Support (DCS) as a Support Enforcement Technician. Dkt. 1:2. In January 2014, Ms. Snell transferred to the DSHS Economic Services Administration Office of Financial Recovery (OFR), taking a Revenue Agent 1 position. Dkt. 1:3. In January 2015 she started a temporary, non-permanent Revenue Agent 2 position there. Dkt. 1:3. In May 2016, Ms. Snell gained permanent full-time status as a Revenue Agent 2. Dkt. 1:3. In July 2017, Ms. Snell

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C

2

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

promoted into a newly created position as the supervisor of the Estate Recovery Unit, a Revenue Agent 4 position. Dkt. 1:3. Shawn Hoage supervised her. Dkt. 1:3. In August 2019, Ms. Snell began a trial service as the OFR Collections Manager, an exempt management position.  Dkt. 1: 9.

Defendant State of Washington is a state under the United States Constitution.  Dkt. 1:2.

Defendant Department of Social and Health Services (DSHS) is a department of the Washington State government.  Dkt. 1:2.

Defendant Una Wiley joined DSHS as the OFR Chief in January 2019. Dkt. 1:7; Declaration of Una Wiley, dated March 1, 2023 (Wiley Decl.), ¶ 2. As Chief, Ms. Wiley oversaw the management of OFR. Wiley Decl., ¶ 2. Chief Wiley initially reported to Anna Aylward, the DSHS Economic Services Administration Assistant Secretary. Wiley Decl., ¶ 2. After a July 2019 DSHS re-organization, Chief Wiley reported to Judy Fitzgerald, the DSHS Facilities, Finance and Analytics Administration Assistant Secretary. Wiley Decl., ¶ 2. In October 2020 she transferred from DSHS to the Department of Children, Youth and Families (DCYF). Wiley Decl., ¶ 21.

Defendant Judy Fitzgerald was appointed Assistant Secretary for Facilities, Finance and Analytics Administration (FFAA) in February 2018. Dkt. 1:2: Declaration of Judy Fitzgerald, dated March 1, 2023 (Fitzgerald Decl.), ¶ 2. In August 2019, DSHS moved the management of the OFR to the FFAA as part of a department-wide re-organization. Dkt. 1:10; Fitzgerald Decl., ¶ 3. Assistant Secretary Fitzgerald thereafter administrated OFR's operations. Fitzgerald Decl. ¶ 3. She retired as Assistant Secretary on September 1, 2022. Fitzgerald Decl., ¶ 14.

///

///

///

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C

3

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

### 2.     Summary of Undisputed Facts Material to Defendants' Summary Judgment Motion

#### a.     Shawn Hoage supervised Ms. Snell from 2014 to August 2019

As Ms. Snell chronicles in her Complaint, she entered government employment in April 2013 as a DSHS Support Enforcement Technician, worked her way up the career ladder and, by July 2017, held a Revenue Agent 4 supervisor position in the OFR. Dkt. 1:3. These were all non-exempt positions and, except for her first position, Shawn Hoage supervised her. Dkt. 1:3.

#### b.     In December 2018, Ms. Snell and other employees filed an internal complaint against Ms. Hoage alleging a multitude of improper behaviors

In December 2018, Ms. Snell and several other employees filed a complaint against Ms. Hoage, alleging she created a hostile work environment. Dkt. 1:3-6. They specifically complained that Ms. Hoage bullied and intimidated workers, gave unwarranted verbal reprimands, publicly demeaned employees, yelled at employees, restricted employee communications, used derogatory terms for employees, threatened employees' jobs without due process, and blocked employees from unit functions because of their appearance. Dkt. 1:3-4. The complaint included a specific instance in which Ms. Hoage gave an employee a miniature punching bag to vent his frustrations. Dkt. 1:5.

In January 2019, pending the investigation, upper management temporarily assigned Ms. Hoage to work in a different building. Dkt. 1:6; Wiley Decl., ¶ 3. Chief Wiley was not involved in the investigation. Wiley Decl., ¶ 3. In June 2019, the investigation cleared Ms. Hoage of any inappropriate behavior and upper management offered her the option to return to her position as Estate Recovery System Program Manager, which she accepted.  Dkt. 1:9.

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C

4

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

c. **Upon learning Ms. Hoage would return to OFR, Ms. Snell and other employees submitted a petition to Secretary Strange opposing her return**

Ms. Snell alleges that in June 2019 when Ms. Snell informed Chief Wiley that employees were upset to hear that Ms. Hoage was returning to the OFR, Chief Wiley told her that "if you want to work in management, you need to be supportive of management decisions" and also told Ms. Snell "not to sign the petition if she ever wanted to continue in management." Dkt. 1:9. Despite these alleged castigations, she and other employees circulated a petition opposing Ms. Hoage's return, obtained 31 signatures, and delivered it to DSHS Secretary Strange. Dkt. 1:9. The petition identified three instances of hostile behavior—that Ms. Hoage gave an employee a punching bag to vent his frustrations; engaged in a personal telephone call, overheard by a gay employee, discussing a gay relative attending a family function; and blocked an employee from leaving her cubicle and yelled at her. Dkt. 1:5-6. Ms. Snell complained that Ms. Hoage publicly degraded her, showed no regard for her physical discomfort after returning from sick leave, attacked her supervisory skills, and insulted the reputation of herself and her staff.  Dkt. 1:4-5.

At Secretary Strange's request, DSHS Human Resources Department (HR) initiated a new investigation, appointing investigator Georgia Armstrong-Cezar who interviewed numerous employees. Fitzgerald Decl., ¶ 4. In October 2019, Ms. Armstrong-Cezar reported that the punching bag incident had been investigated in the first investigation and determined unfounded; the incident regarding blocking and yelling at an employee had been independently addressed; and that there was no conclusive evidence regarding the other alleged misbehaviors, stating many alleged events occurred too distant in the past and/or there was insufficient evidence to support the allegation. Fitzgerald Decl., ¶ 4 and Exhibit A attached thereto. Management again advised Ms. Hoage of her right to return to OFR which she did in November 2019. Dkt. 1:7.

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C

5

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

Before Ms. Hoage's return, Chief Wiley discussed with all managers the importance of supporting upper management's decision and instructed them to work with their staff to behave professionally and ensure Ms. Hoage felt welcome when she returned to the office. Wiley Decl., ¶ 5. She specifically discussed this matter with Ms. Snell instructing her to stay neutral, be supportive of upper management's decision to return Ms. Hoage to OFR, remain professional and respectful when interacting with Ms. Hoage, and address any staff who exhibited inappropriate behavior towards Ms. Hoage. Wiley Decl., ¶ 5. When Ms. Snell replied that staff will walk if Ms. Hoage returns to the OFR, Chief Wiley said that would be the employees' choice. Wiley Decl. ¶ 5.

### d.    Amber Wright joined the OFR in June 2018

Amber Wright spent more than fifteen years in the private sector retail industry, both in labor as well as in management positions. Declaration of Amber Wright, dated February 24, 2023 (Wright Decl.), ¶ 2. In June 2018, Ms. Wright started working at the OFR as an Office Assistant 3. Wright Decl., ¶ 3.

In January 2019, after Ms. Wiley became the OFR Chief, Ms. Wright asked Chief Wiley for a Developmental Job Assignment (DJA), which are voluntary assignments designed to encourage employees to learn new duties and skills, enabling them to seek internal promotions. Wiley Decl., ¶ 6. Chief Wiley needed assistance with her OFR re-organization project and approved DJAs for Ms. Wright and another employee to assist her with administrative duties. Dkt. 1:7; Wiley Decl., ¶ 6. As she learned the work in the office and worked with her leadership team, they consolidated the administrative support staff into one unit. Wiley Decl., ¶ 6. Chief Wiley was directed by the Assistant Secretary to create and hire an Administrative Assistant to manage this new unit.  Wiley Decl., ¶ 7. Several people in the office, including Ms. Wright, expressed an interest in the positon and I isolated

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C

6

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

1   all of them from the recruitment process. Wiley Decl., ¶ 7. Chief Wiley created the position

2   description, submitted her proposal to HR for approval and to the Class and Classification Unit

3   (CCU) for determination of the position's class, classification, and applicable wage rate. Dkt.1:7;

4   Wiley Decl., ¶ 7.

5

6   Once approved, this position was publicly advertised and went through a vigorous open and

7   competitive hiring process. Wiley Decl., ¶ 8.  Many people applied, both from within OFR and from

8   other agencies. Wiley Decl., ¶ 8; Wright Decl., ¶ 8. The interview panel interviewed multiple

9   candidates, including Ms. Wright, and unanimously selected her for the position. Wiley Decl., ¶ 8.

10

11          **e.      Una Wiley joined the OFR in January 2019 and as its new Chief,
                     began work to modernize the office and re-organize its positions to
12                   streamline operations**

13   Ms. Wiley joined the OFR in January 2019 as the Office Chief.  Dkt. 1:7; Wiley Decl., ¶ 2.

14   She was selected for the position in an open and competitive process.  Wiley Decl., ¶ 2.

15   As the new Chief, she started the task of modernizing the office to streamline its operations

16   and assessing and updating office equipment and processes. Dkt. 1:7; Wiley Decl., ¶ 11. Throughout

17   her tenure, Chief Wiley and her staff worked to adjust positions and reorganize work duties and

18   responsibilities to improve the efficiency of OFR's operations. Wiley Decl., ¶ 11. Chief Wiley

19   deleted some positions, merged the work responsibilities of other positions, and also created new

20   positions to meet business needs. Wiley Decl., ¶ 11. As she worked on the re-organization, Chief

21   Wiley temporarily moved responsibilities of positions and left positions temporarily vacant.  Wiley

22   Decl. ¶ 11.  Chief Wiley met with her supervisor, initially Asst. Sec. Aylward and later Asst. Sec.

23   Fitzgerald, on a bi-weekly basis and updated them on her efforts.  Wiley Decl, ¶ 11.

24

25

26

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C                                    7                    ATTORNEY GENERAL OF WASHINGTON
                                                                                            Torts Division
                                                                                      800 Fifth Avenue, Suite 2000
                                                                                       Seattle, WA 98104-3188
                                                                                            (206) 464-7352

Among the tasks started by her predecessor was the consolidation of several management positions into a new Collections Manager position, an exempt, managerial position. Wiley Decl., ¶ 12. Chief Wiley and her assistants created the job description for this position. Wiley Decl., ¶ 12. Chief Wiley submitted the new position request to HR and to CCU for determination of the job's class, classification and pay rate. Wiley Decl., ¶12. After receiving approval in July 2019, Chief Wiley advertised the position which received multiple applications. Wiley Decl., ¶ 12. Ms. Snell alleges that Chief Wiley tried to give her an unfair advantage by offering her the interview questions in advance. Dkt. 1:9-10. Chief Wiley denies offering interview questions to Ms. Snell before her interview because, as a practice, Chief Wiley did not distribute questions even to the interview panel until a few hours before interviews begin.  Wiley Decl, ¶ 13. It is undisputed that on August 16, 2019, after an open and competitive public recruitment process, the interview panel selected Ms. Snell for the position. Dkt. 1:9; Wiley Decl., ¶ 14.

When Chief Wiley offered the Collections Manager position to Ms. Snell, Ms. Snell acknowledged there was a one-year trial service period for this position. Wiley Decl., ¶ 15. This meant upper management could end her trial service during this time and revert her to her prior Revenue Agent 4 classification. Wiley Decl., ¶ 15. In checking references, Ms. Snell's managers and co-workers expressed concern that Ms. Snell was too involved with the personal issues of the employees she supervised, so Chief Wiley specifically discussed this concern with Ms. Snell. Wiley Decl., ¶ 15 and Exhibit A attached thereto. Ms. Snell said she understood her role would be different as a manager and promised to act differently. Wiley Decl., ¶ 15.

By the end of September 2019, Chief Wiley received multiple complaints from other managers that Ms. Snell was interfering with their unit's work and with their personnel issues,

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C

8

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

and this was creating serious tensions between the managers in the OFR. Wiley Decl. ¶ 16. Chief Wiley informed HR and Asst. Sec. Fitzgerald of this situation and recommended ending Ms. Snell's trial service, attaching statements she received from OFR managers and supervisors. Wiley Decl., ¶ 16 and Exhibit B attached thereto. The HR instructed Chief Wiley to give Ms. Snell more time, to explain work expectations, and to mentor her, which Chief Wiley did. Wiley Decl., ¶ 16.

As part of Ms. Snell's training, Chief Wiley invited her to attend a collections conference in New York City from November 3 to 8, 2019, to learn more about the OFR collections tracking system and attend a live demonstration of the company's newest products. Wiley Decl., ¶ 17. Ms. Snell accepted. Dkt. 1:10. Chief Wiley told Ms. Snell and Asst. Sec. Fitzgerald that some family members would accompany her to New York, at her own expense.  Dkt. 1:10; Wiley Decl., ¶ 17; Fitzgerald Decl. ¶ 7.

When they returned, Chief Wiley and Ms. Snell reported on the conference to their leadership team. Wiley Decl., ¶ 17. A few days later, after Chief Wiley went on vacation, Ms. Snell reported to HR that Chief Wiley misused state funds by having the State pay her family's expenses on the trip, forged her name on a newly created, highly compensated Management Analyst 4 position to benefit Ms. Wright, offered Ms. Snell the interview questions prior to her interview for the Collections Manager job, and interfered with an employee's Family Medical Leave Act leave. Dkt. 1:11. HR investigated these allegations and found no irregularities in Chief Wiley's behavior or in her expense report for the New York City trip. Wiley Decl., ¶ 17 and Exhibit C attached thereto.

Ms. Snell then asked to meet with Assistant Secretary Fitzgerald, with whom she met on November 12, 2019. Dkt. 1:11. Ms. Snell alleges she laid out her concerns about Chief Wiley's

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C

9

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

unethical conduct to Asst. Sec. Fitzgerald. Dkt. 1:11. Asst. Sec. Fitzgerald recalls this meeting differently. Fitzgerald Decl., ¶ 8. She recalls having a short, friendly introductory meeting in which Ms. Snell talked about her trip to New York City with Chief Wiley to attend the collections conference. Fitzgerald Decl., ¶ 8. She recalled Ms. Snell saying she enjoyed the conference with Chief Wiley and got to know the Chief better. Fitzgerald Decl., ¶ 8. Asst. Sec. Fitzgerald does not recall Ms. Snell reporting any misuse of government funds by Chief Wiley during the trip or asking her to investigate any questionable conduct by Chief Wiley. Fitzgerald Decl., ¶ 8. She does not recall telling Ms. Snell that she needed to be more supportive of management. Fitzgerald Decl., ¶ 8. Asst. Sec. Fitzgerald recalls Ms. Snell talking about her work experience and responding that she appreciated Ms. Snell's work and that her work experience would be a good resource for Chief Wiley. Fitzgerald Decl., ¶ 8.

In January 2020, Chief Wiley spoke with Asst. Sec. Fitzgerald about having had almost every unit manager complain to her about Ms. Snell's interfering with their work and personnel matters. Wiley Decl., ¶ 18. Chief Wiley forwarded to HR reports she received from several staff employees that Ms. Snell gave them the interview questions prior to interviews for internal positions they sought and held mock interviews with other employees prior to interviews. Wiley Decl., ¶ 18. One employee showed Chief Wiley on her cell phone the email she received from Ms. Snell which attached the interview questions. Wiley Decl., ¶ 18. Based on the managers' complaints and these reports, she recommended ending Ms. Snell's trial service as Collections Manager. Wiley Decl. ¶ 18.  Asst. Sec. Fitzgerald said she would support HR's decision and, thereafter, signed the letter informing Ms. Snell that her trial service was ending. Fitzgerald Decl. ¶¶ 9, 10. Thereafter, Ms. Snell requested to meet with Asst. Sec. Fitzgerald, which Asst. Sec. Fitzgerald declined. This was the

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C

10

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

extent of Asst. Sec. Fitzgerald's personal involvement with matters regarding Ms. Snell. Fitzgerald Decl., ¶ 10.

## IV.    ISSUES PRESENTED

1.    Are Defendants Una Wiley and Judy Fitzgerald entitled to summary judgment on Ms. Snell's §1983 claim where she cannot produce evidence establishing that either of them denied her rights to free speech and to petition the government?

2.    Are Defendants Una Wiley and Judy Fitzgerald entitled to qualified immunity against Ms. Snell's §1983 claim because Ms. Snell cannot defeat their affirmative defense?

3.    Are Defendants entitled to summary judgment on Ms. Snell's Washington Law Against Discrimination (WLAD) claim where she cannot establish a prima facie case that Defendants violated WLAD or show their action to end her trial service was a pretext for discriminating against her?

4.    Are Defendants entitled to summary judgment on Ms. Snell's RCW 63.60.050 claim where Ms. Snell cannot establish a prima facie case that any Defendant used her signature in a manner that violated RCW 63.60.050?

5.    Is Defendant Una Wiley entitled to summary judgment on Ms. Snell's misappropriation of identify claim when Washington State does not recognize such a claim under common law?

6.    Is DSHS entitled to summary judgment on Ms. Snell's negligent hiring and/or retention claims where she cannot establish the elements of a prima facie case that DSHS negligently hired and/or retained Chief Wiley or Asst. Sec. Fitzgerald?

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C

11

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

7.      Are Defendants entitled to summary judgment on Ms. Snell's RCW 42.40 claim where Ms. Snell cannot establish a prima facie case that she met the statute's definition of whistleblower?

## V.      STANDARD OF REVIEW

**A.      Summary Judgment is Appropriate Because There are No Genuine Issues of Material Fact in Ms. Snell's Claims**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (citing former Fed. R. Civ. P. 56(c)). The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the non-movant's claim. *Celotex,* 477 U.S. at 322. Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323-24. As Defendants will show below, there is no evidence to support Ms. Snell's claims, the State is immune from Ms. Snell's §1983 claim, and Chief Wiley and Asst. Sec. Fitzgerald are entitled to qualified immunity.

## VI.      ARGUMENT

**A.      To Establish Her §1983 Claims Ms. Snell Must Prove Ms. Wiley and Ms. Fitzgerald Violated Her First Amendment Rights to Free Speech and to Petition the Government**

To state a claim under 42 U.S.C. §1983 a plaintiff must show (1) a violation of rights protected by the Constitution or created by a federal statute, (2) proximately caused (3) by the conduct of a state official (4) acting under color of state law. *Ashcroft v. Iqbal,* 556 U.S. 662, 678

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C

12

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

(2009); *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1061 (9th Cir. 2012). The plaintiff must state her allegations with appropriate particularity, in that she must allege the particulars of conduct, time, place and person responsible.  *See Evancho v. Fisher,* 423 F.3d 347, 354 (3rd Cir. 2005).

To establish a §1983 claim specific to a violation of an employee's First Amendment rights, the plaintiff must establish that (1) the employee engaged in constitutionally protected speech, (2) the defendant took adverse employment action against the employee, and (3) the employee's speech was a substantial or motivating factor for the adverse action. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977).

In the framework of government employment, a governmental employer may impose certain restraints on the speech of its employees, restraints that would be unconstitutional if applied to the general public. *City of San Diego v. Roe,* 543 U.S 77, 80 (2004). To determine whether a public employee has alleged a violation of First Amendment rights as a result of retaliation for his speech, the courts consider whether (1) the plaintiff spoke on a matter of public concern; (2) the plaintiff spoke as a private citizen or public employee; (3) the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) the state had an adequate justification for treating the employee differently from other members of the general public; and (5) the state would have taken the adverse employment action even absent the protected speech. *Clairmont v. Sound Mental Health,* 632 F.3d 1091, 1103 (9th Cir. 2011) (citation omitted).

As to form and context, courts look to the purpose of the speech, focusing on the employee's motivation and the chosen audience. *Ulrich v. City & Cnty. of San Francisco,* 308 F.3d 968, 979 (9th Cir. 2002). The form that the speech takes is a factor relevant to whether

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C

13

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

the speech is a matter of public concern. *Clairmont*, 632 F.3d at 1104. Although it is not dispositive, a small or limited audience weighs against a claim of protected speech. *Id*. When a public employee speaks on matters of personal interest, "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Ulrich*, 308 F.3d at 978.  If the plaintiff is acting in personal interest and responding to her internal work environment, her speech is more akin to "internal power struggles within the workplace," which the Supreme Court and Ninth Circuit have consistently excluded from protected public speech. *See, e.g. Borough of Duryea, Pa. v. Guarnieri,* 564 U.S. 379, 399, 131 S.Ct. 2488, 2501 (2011); *Desrochers v. City of San Bernardino,* 572 F.3d 703, 714 (9th Cir. 2009)(When the speech takes the form of an internal employee grievance, and is not presented to the public, the form "cuts against a finding of public concern.")

A third inquiry is whether the speech was a substantial or motivating factor in the adverse action taken against the plaintiff. *Clairmont,* 632 F.3d at 1106. Chief Wiley was not OFR's Appointing Authority so she did not have authority to end Ms. Snell's trial service or revert her to her former Revenue Agent 4 classification. Wiley Decl., ¶ 19. The only action Chief Wiley could and did take was to recommend ending Ms. Snell's trial service.  Wiley Decl., ¶ 19.

Ms. Snell alleges Chief Wiley and Asst. Sec. Fitzgerald were aware that she had filed a tort claim with the Department of Enterprise Services' Office of Risk Management when they retaliated against her. Dkt. 1:14. Ms. Snell filed her tort claim on June 26, 2020. Declaration of Michelle Hansen, dated February 28, 2023 (Hansen Decl.), ¶ 4. Ms. Snell also alleges that Chief Wiley and Asst. Sec. Fitzgerald were aware of her lawsuit against them when they retaliated

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C

14

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

against her. Dkt. 1:14. Chief Wiley and Asst. Sec. Fitzgerald were served with Ms. Snell's lawsuit on November 23, 2020. Hansen Decl., ¶ 5. Ms. Snell's trial service ended in January 2020, months before she filed her tort claim and initiated her lawsuit.

**B.      Qualified Immunity Protects Defendants Wiley and Fitzgerald From §1983 Claim**

Under the doctrine of qualified immunity, government officials are shielded from liability for civil damages unless they violate clearly established law of which all reasonable officials in their circumstances would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The issue of qualified immunity is a question of law for the court. *See Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993). Applying the standard is a two-part process. The first question is whether the law governing the official's conduct was clearly established. If the relevant law was not clearly established, the official is entitled to immunity from suit. *Wood v. Moss,* 572 U.S. 744, 757 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). If the law was clearly established, the dispositive inquiry is whether it would have been clear to all reasonable officials that the conduct was unlawful in the situation she confronted. *Saucier v. Katz,* 533 U.S. 194, 202 (2001), *overruled in part* by *Pearson v. Callahan,* 555 U.S. 223 (2009). If either prong is satisfied, then the official is entitled to qualified immunity.

Ms. Snell's internal filing of complaints against her supervisors and managers is not speech protected by the First Amendment's freedom of speech or right to petition. *See, e.g. Borough of Duryea, Pa.,* 564 U.S. at 199; *Desrochers,* 572 F.3d at 714. Consequently, Chief Wiley and Asst. Sec. Fitzgerald could not have violated Ms. Snell's First Amendment rights by ending her trial service. Even if the Court were to determine that Ms. Snell can establish a prima facie case for the violation of her First Amendment Rights, the Court should hold, as a matter of law, that there is no

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C

15

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

clearly established law in which all reasonable officials would have understood that ending a trial service after an employee files internal reports against her supervisor violated her constitutional rights even when the option to end trial service was an express condition of promoting an employee to a new exempt position.

Furthermore, courts have consistently held that state governments are not a "person" under 42 U.S.C. §1983. "[N]either a State nor its officials acting in their official capacities are 'persons' under §1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). On this ground, the court should dismiss Ms. Snell's §1983 against Defendants Wiley and Fitzgerald.

**C.     Should the Court Determine Ms. Snell Fails to State a Federal §1983 Claim, It Should Decline to Exercise Jurisdiction Over the State-Law Claims**

A federal court has supplemental jurisdiction over pendent state claims to the extent they are so related to claims in the action within the court's original jurisdiction that they form a part of the same case or controversy. 28 U.S.C. §1367(a).  In the usual case in which all federal-law claims are eliminated before trial, the balance of facts will point towards declining to exercise jurisdiction over the remaining state-law claims. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, n.7 (1988), *superseded on other grounds by statute as stated in Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010).  If this Court determines Ms. Snell cannot establish her §1983 action against Defendants Wiley and Fitzgerald, it should decline to exercise jurisdiction over the remaining state-law claims and dismiss such claims without prejudice.

///

///

///

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C

16

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

**D.      Ms. Snell Cannot Provide Any Specific Facts Showing the Defendants Violated WLAD**

**1.      Ms. Snell cannot prove the elements of her discrimination claim**

Assuming for the sake of argument that the Court decides to consider Ms. Snell's state-law claims, Ms. Snell cannot establish the prima facie elements of any of her state claims.  The Washington Law Against Discrimination (WLAD), chapter 49.60 RCW, prohibits employers from discriminating against a person because of that person's membership in a protected class. RCW 49.60.180. To establish a prima facie case of discrimination, a plaintiff must show that she (1) belongs to a protected class, (2) was treated less favorably in terms or conditions of her employment than a similarly situated, non-protected employee, and (3) the non-protected "comparator" was doing substantially the same work.  *Domingo v. Boeing Emps.' Credit Union*, 124 Wn. App. 71, 81, 98 P.3d 1222 (2004), *abrogated on other grounds by Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cnty.*, 189 Wn.2d 516, 404 P.3d 464 (2017).

Ms. Snell does not identify the protected class she belongs to for the purposes of her WLAD claim. Dkt. 1. She does not identify the non-protected comparators whom she alleges were similarly situated to her and doing substantially the same work. Dkt. 1. She does not identify the unfavorable employment treatment she received compared to them. Dkt. 1. This is because there are none. The only OFR employee Ms. Snell identifies as receiving preferential treatment is Amber Wright who Chief Wiley allegedly benefited by forging documents to create a new, highly compensated position just for her, following DSHS's pattern of awarding jobs to incompetent people based on nepotism and cronyism, without using an open and competitive hiring processes. Dkt. 1:7-9. Ms. Snell's allegations involve her position as an exempt manager. Dkt. 1:9-10. Ms. Snell does not identify any non-protected comparator who is also in an exempt

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C

17

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

managerial position and what less favorable terms or conditions of employment she received that they did not. Dkt. 1.

In analyzing WLAD claims, Washington courts follow the three-step burden-shifting analysis the United States Supreme Court established more than 40 years ago in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Mikkelsen*, 189 Wn.2d at 526-27.  Pursuant to that analysis, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Id.* at 527.  If a plaintiff is able to do so, then a rebuttable presumption of discrimination arises. *Id.* The defendant is then afforded an opportunity to rebut that presumption by "articulat[ing] a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* (quoting *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 446, 334 P.3d 541 (2014)). In doing so, "[t]he employer's burden is merely one of production, rather than persuasion." *Mikkelsen*, 189 Wn.2d at 533. "The employer need only introduce 'evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action.'" *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993)). Then, the burden of proof shifts back to the plaintiff to show the defendant's articulated nondiscriminatory reason for the adverse employment action was a pretext. *Id.*

Ms. Snell cannot establish a prima facie case under WLAD for discrimination. Even assuming Ms. Snell can establish a prima facie case, DSHS had legitimate, non-discriminatory reasons for ending Ms. Snell's trial service as Collections Manager. Ms. Snell cannot provide any evidence that DSHS's reasons were a pretext for the Defendants to discriminate against her.

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C

18

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

### 2. DSHS Had Non-Discriminatory Reasons for Ending Ms. Snell's Trial Service as Collections Manager

When Ms. Snell accepted the exempt managerial position of Collections Manager she signed a form acknowledging that the position had a one year trial service period during which period management could end the trial service and revert her to her former Revenue Agent 4 classification. Wiley Decl., ¶ 15. Defendants' evidence shows that despite instruction and coaching from her supervisor, Chief Wiley, Ms. Snell could not implement two fundamental managerial practices, first, to support upper management decisions and, second, to collaborate with her management peers and not to interfere with their work or the management of their staff. Wiley Decl., ¶ 20. Hearing reports from other employees, Chief Wiley reported to HR when Ms. Snell failed to follow fundamental management rules like not borrowing money from employees she supervised, not accepting offers from staff to provide her with gifts like a free flight ticket or a hotel room, or asking to stay overnight at her staff's homes. Wiley Decl. ¶ 20. Ms. Snell's continued personal relationships with those she supervised led, in part, to the end of Ms. Snell's trial service. These were legitimate, non-discriminatory reasons for ending Ms. Snell's trial service.

### 3. Ms. Snell Cannot Show Pretext

Defendants have provided the Court with evidence showing they can meet their burden to articulate legitimate, nondiscriminatory reasons for ending Ms. Snell's trial service. The burden of proof returns to Ms. Snell to show DSHS's reasons for ending her trial service was a pretext for discriminating against her. *See Mikkelsen*, 189 Wn.2d at 527.  A plaintiff may meet that burden by "offering sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is pretextual or (2) that although the employer's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer." *Id.* (quoting *Scrivener,* 181 Wn.2d at 446-47).

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C

19

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

Under the first method to show pretext, the employee must show that the employer's articulated reason has no basis in fact, was not really a motivating factor for the decision, lacks a temporal connection to the decision, or was not a motivating factor in employment decisions for other employees in the same circumstances. *Kuyper v. Dep't of Wildlife*, 79 Wn. App. 732, 738-39, 904 P.2d 793 (1995), *review denied*, 129 Wn.2d 1011, 917 P.2d 130 (1996).

Alternatively, to show pretext, Ms. Snell must demonstrate discrimination was nevertheless a "substantial factor" in a decision for which the employer also has a legitimate reason by producing evidence to establish "that the protected characteristic was a significant motivating factor bringing about the employer's decision." *Scrivener*, 181 Wn.2d at 444. Circumstantial and inferential evidence can be sufficient to show pretext, however, "an employee's subjective beliefs and assessments as to his performance are irrelevant." *Griffith v. Schnitzer Steel Indus., Inc.,* 128 Wn. App. 438, 447, 115 P.3d 1065 (2005). As the Washington Supreme Court has recognized, "courts must not be used as a forum for appealing *lawful* employment decisions simply because employees disagree with them." *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 190 n.14, 23 P.3d 440 (2001), *abrogated on other grounds by Mikkelsen*, 189 Wn.2d 516.

There is no evidence of pretext in this case. First, Ms. Snell has not articulated a basis for claiming that she is in a protected class. Second, Ms. Snell has not and cannot identify comparators. The complaints made by other OFR managers led to disruptive situations creating tension in the OFR. OFR staff employees reported improperly receiving interview questions before their interviews from Ms. Snell and expressed fear that Ms. Snell would retaliate against them for reporting this improper behavior. Wiley Decl., ¶ 18. This is the very reason a trial

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C

20

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

service period is an important tool in determining whether an employee is appropriately suited for a particular position. Fitzgerald Decl., ¶ 12. Ms. Snell's failure to practice appropriate managerial behaviors led to her trial service ending. Ms. Snell cannot prove her WLAD claims.

**E.    Ms. Snell Cannot Establish that DSHS was Negligent in Hiring and/or Retaining Ms. Wiley or Ms. Fitzgerald as Employees**

Ms. Snell alleges DSHS was negligent in hiring and retaining Chief Wiley and Asst. Sec. Fitzgerald. Dkt. 1:13. An employer can be liable for negligent hiring or retention for failing to exercise ordinary care by hiring or retaining an employee known to be unfit. *Evans v. Tacoma Sch. Dist. No. 10*, 195 Wn. App. 25, 46, 380 P. 3d 553 (2016). Negligent hiring occurs at the time of hiring, while negligent retention occur in the course of employment. *Id*. at 46-47. The employer has a duty to prevent the tasks, premises, or instrumentalities entrusted to an employee from endangering others. *Id*.

As to her negligent hiring claim, Ms. Snell does not identify why either Chief Wiley or Asst. Sec. Fitzgerald were unfit for the positions for which they were hired. Dkt. 1. As to her negligent retention claim, Ms. Snell's only allegations against Asst. Sec. Fitzgerald is that Asst. Sec. Fitzgerald met with her on November 12, 2019, that, as the Appointing Authority, she signed the letter notifying Ms. Snell that her trial service ended, and she declined Ms. Snell's request for a meeting after receiving the letter. Dkt. 1:13-14. As to Chief Wiley, Ms. Snell alleges DSHS negligently retained Chief Wiley because Chief Wiley allegedly ignored her complaints about Ms. Hoage's alleged anti-gay slurs and repetitively told Ms. Snell to be more supportive of management. Dkt. 1:13-14. Ms. Snell also alleges Chief Wiley made material and unwarranted changes in Ms. Snell's job duties and assignments, initiated unwarranted investigations against her, accused her of not adhering to attendance guidelines and retaliated

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C

21

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

against her by placing Ms. Snell on an alternate assignment doing menial work to ostracize her and warn DSHS employees against speaking out on matters of public concern. Dkt. 1:13-14. Ms. Snell, however, cannot establish who at DSHS hired or retained these Defendants, what unlawful activity, if any, occurred, why these alleged actions endangered OFR employees, and how DSHS proximately caused her alleged injuries.

**F.  Ms. Snell Cannot Establish Her Claim that Defendants used Her Name in Violation of RCW 63.60.050 or that Chief Wiley Misappropriated Her Identify**

The Washington Personality Rights Act (WPRA) establishes that "[e]very individual or personality has a property right in the use of his or her name, voice, signature, photograph, or likeness," which is "freely transferable, assignable, and licensable," and survives "the death of the individual or personality." RCW 63.60.010. An infringement under WPRA occurs when:

> [a]ny person ... uses or authorizes the use of a living or deceased individual's or personality's name, voice, signature, photograph, or likeness, on or in goods, merchandise, or products entered into commerce in this state, or for purposes of advertising products, merchandise, goods, or services, or for purposes of fund-raising or solicitation of donations, or if any person disseminates or publishes such advertisements in this state, without written or oral, express or implied consent of the owner of the right.

RCW 63.60.050.

Ms. Snell alleges Chief Wiley forged Ms. Snell's name as the approving supervisor on a position description form for a new position titled Management Analyst 4 so that she could sign the form as the appointing/approving authority. Dkt. 1:8. The Court should dismiss this claim as a matter of law. First, Chief Wiley could not sign any document as the "appointing/approving authority" because she was not the OFR's Appointing Authority. Wiley Decl. ¶ 19. Asst. Sec. Fitzgerald, as the top administrator of the OFR, was the Appointing Authority. Fitzgerald Decl. ¶ 13. As it happened, someone in HR noticed the discrepancy in the proposed position description

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C

22

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

form, determined that an office assistant likely made an error when collating a group of position

description forms, and obtained a corrected signature page to replace the incorrect page. Wiley

Decl., ¶ 13. There was no forgery or misappropriation of Ms. Snell's signature or identity.

Moreover, Ms. Snell cannot establish a RCW 63.60.050 claim because she cannot prove

that either Chief Wiley or DSHS used Ms. Snell's signature on or in goods, merchandise, or

products that was entered into commerce in the State of Washington, or for purposes of

advertising products, merchandise, goods, or services, or for purposes of fund-raising or

solicitation of donations in the State of Washington. Dkt. 1; Wiley Decl., ¶ 10. Ms. Snell cannot

establish the elements of a RCW 63.60.050 claim against the defendants.

Ms. Snell also cannot prove a common law misappropriation of identity claim against

Ms. Wiley because there is no such separate cause of action in Washington State. A claim for

misappropriation of identity must meet the requirements of the statutory claim under

RCW 63.60.050, which Ms. Snell has failed to do.

### G.   Ms. Snell Cannot Establish That She is a Whistleblower Who is Entitled to Protection Under RCW 42.40

RCW 42.40.050 prohibits retaliation against a whistleblower. To establish a prima facie

case of retaliation as a whistleblower, Ms. Snell must show: (1) she engaged in statutorily

protected activity; (2) Chief Wiley and/or DSHS took some adverse employment action against

her; and (3) there is a causal link between the protected activity and the adverse action. *Lodis v.

Corbis Holdings, Inc.,* 172 Wn. App. 835, 846, 292 P.3d 779 (2013).

A plaintiff alleging an adverse employment action in violation of public policy bears the

initial burden to show the adverse action against her was motivated by reasons that contravene a

clear mandate of public policy. *Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 725, 425 P.3d 837

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C

23

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

(2018). The plaintiff must produce evidence that the public-policy-linked conduct was a significant cause for the adverse employment action. *Id*. If the plaintiff succeeds in presenting a prima facie case, the burden shifts to the employer to articular a legitimate non-pretextual non-retaliatory reason for the adverse employment action. *Id*. at 725-26.  If the employer articulates such a reason, the burden shifts back to the plaintiff to show either that the reason was pretextual or that although the employer's reason is legitimate, the public-policy-linked conduct was nevertheless a substantial factor motivating the employer to discharge the worker. *Id*. at 726.

Ms. Snell cannot state a claim against Chief Wiley because Chief Wiley was never the Appointing Authority and, therefore, had no authority to take employment actions against Ms. Snell. Wiley Decl., ¶ 19; Fitzgerald Decl., ¶ 13. Even assuming Ms. Snell engaged in protected activity, the undisputed facts show Chief Wiley was a not the decision-maker as to Ms. Snell's trial service. *See Raad v. Fairbanks North Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) (dismissing a teacher's retaliation claims because she failed to point to any evidence in the record supporting her assertions that the decision makers were aware she engaged in protected activity).

It is also logically impossible that Ms. Snell's alleged protected activities would cause the actual upper management decision-makers, who were not targets of Ms. Snell's accusations, to retaliate against Ms. Snell by ending her trial service. Ms. Snell cannot provide the Court with evidence to prove pretext here or that the reason the alleged retaliatory acts occurred because she was a statutorily protected whistleblower. Further, the law does not support Ms. Snell's argument because her complaint activities, made in the context of workplace grievance

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C

24

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

processes, are not protected by the whistleblower statute.  *See*, *Smith v. Bates Tech. Coll.*, 139 Wn.2d 793, 801, 991 P.2d 1135 (2000).

**H.      Even If Either Defendants Wiley or Fitzgerald Had Acted Improperly, DSHS Cannot Be Held Vicariously Liable for Their Employees' Actions**

A plaintiff generally cannot assert claims against an employer for negligent hiring and retention of an employee and, at the same time, attempt to hold the employer vicariously liable for the employee's conduct. *Evans*, 195 Wn. App. at 47. Either the employee is acting outside the scope of his employment or is acting on the employer's behalf. *Niece v.  Elmview Grp. Home*, 131 Wn.2d 39, 48, 929 P.2d 420 (1997). Here, Ms. Snell admits that all actions taken by Chief Wiley and Asst. Sec. Fitzgerald were taken in their official capacities so suing these individual officials is the same as suing DSHS or the State themselves. *Will*, 491 U.S. at 71. In trying to hold DSHS liable for alleged actions taken by Chief Wiley and/or Asst. Sec. Fitzgerald, Ms. Snell is attempting to hold DSHS vicariously liable for Chief Wiley and Asst. Sec. Fitzgerald' official actions which, under the law, she cannot do.

## VII.     CONCLUSION

For all of the reasons stated above, the Defendants request that the Court hold, as a matter of law, that there is no genuine issue of material fact in this case and that the undisputed facts establish that Defendants are entitled to summary judgment in their favor as a matter of law. On these grounds, Defendant request that the Court dismiss Plaintiff Kim Snell's claims with prejudice. If the Court decides not to exercise supplemental jurisdiction over Ms. Snell's state-law claims, Defendants

///

///

///

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
NO. 3:20-cv-06028-J_C

25

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

1   request that the court dismiss Ms. Snell's federal §1983 claim with prejudice and dismiss her state-

2   law based claims without prejudice.

3       DATED this 1st day of March, 2023.

4

5                              I certify that this memorandum contains 7,408

6                              words, in compliance with the Local Civil Rules.

                             ROBERT W. FERGUSON

7                              Attorney General

8

9                              *s/Michelle Hitomi Hansen*

                             MICHELLE HITOMI HANSEN, WSBA No. 14051

                             Assistant Attorney General

10                             Washington State Attorney General's Office

                             800 Fifth Avenue, Suite 2000

11                             Seattle, WA 98104-3188

                             Telephone: (206) 464-7744

12                             Fax: (360) 586-7228

                             E-mail: michelle.hansen@atg.wa.gov

13                             Attorney for Defendants

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION            26           ATTORNEY GENERAL OF WASHINGTON
FOR SUMMARY JUDGMENT                     Torts Division
NO. 3:20-cv-06028-J_C                     800 Fifth Avenue, Suite 2000
                                          Seattle, WA 98104-3188
                                          (206) 464-7352

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of March, 2023, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Plaintiff's Attorney:

Richard H. Wooster, WSBA #13752
Devin Epp, WSBA #60037
Kram and Wooster, P.S.
1901 South I Street
Tacoma, WA  98405-3810
rich@kjwmlaw.com
devin@kjwmlaw.com

DATED this 1st Day of March, 2023.

*/s/ Kim Wilcox*
KIM WILCOX
LEGAL ASSISTANT

NO. 3:20-cv-06028-JHC
CERTIFICATE OF SERVICE

27