THE HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KIM MS. SNELL,<br><br>                                         Plaintiff<br><br>Vs.<br><br>THE STATE OF WASHINGTON;<br>DEPARTMENT OF SOCIAL AND<br>HEALTH SERVICES, JUDITH A.<br>FITZGERALD and UNA I. MS. WILEY<br><br>                                         Defendants. | Case No. 3:20-cv-06028-BHS<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>NOTE ON MOTION CALENDAR: March 24, 2023<br><br>ORAL ARGUMENT REQUESTED |

## I.      SUMMARY OF ARGUMENT

Defendants' Motion for Summary Judgment ignores multiple questions of fact and must be denied on that basis alone.  Defendants fail to address retaliation against Kim Snell after filing her tort claim and the amended tort claim asserting her right to petition.  Ms. Snell raised issues of public concern regarding mismanagement and retaliation by DSHS management against her and other employees. Her concerns regarded the following: forgery of Ms. Snell's signature on a Position Description Form ("PDF") elevating Amber Wright to a position with a massive pay increase; waste of government funds for a conference that Una Wiley treated like a family vacation; hiring irregularities regarding Ms. Wright; and retaliation from a reprimanded employee who made homophobic remarks, and from management when she opposed its decisions regarding a toxic workplace. Ms. Snell qualifies as both a whistleblower under RCW

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

42.40 and protection under the First Amendment. Defendant relies on inadmissible hearsay for the assertion that Ms. Snell engaged in improper conduct. Ms. Wiley's and Judy Fitzgerald's efforts to evade personal liability by pointing to other actors for adverse employment actions ignore the "cat's paw" theory by which they are responsible for inducing others to take adverse action against Plaintiff. Defendant falsely asserts that Ms. Wiley and Ms. Fitzgerald are being sued in their "official capacity." DSHS is liable for Ms. Wiley and Ms. Fitzgerald's violation of the Washington Law Against Discrimination (WLAD).

## II.     FACTUAL BACKGROUND

Ms. Snell received a series of adverse employment actions after she brought forward matters of public concern, including: (1) Homophobic slurs made in the workplace by a DSHS manager, Shawn Hoage; (2) Ms. Hoage's behavior of trapping an employee in her cubicle while she berated the employee for comments opposing Ms. Hoage's homophobic remarks; (3) Attempting to have Ms. Snell terminate the employee for her opposition to Ms. Hoage's comments; (4) Raising concerns that her reports about Ms. Hoage's behavior was not adequately reported in Ms. Hoage's investigation report; (5) Signing a petition opposing Ms. Hoage's return to her management position; (6) Objecting to Ms. Hoage's harassing and retaliatory comments to Ms. Snell being placed under Ms. Snell's supervision; (7) Concerns about improper conduct by Ms. Wiley including, (a) offering Ms. Snell job interview questions before her interview; (b) Ms. Wright's developmental job assignment; (c) giving Ms. Wright interview questions for the Management Analyst 4 (MA4) position; (d) restricting the pool of applicants allowed to interview for the MA4 position; (e) forging Ms. Snell's signature on a Position Description Form (PDF) elevating MA4 position from an Office Assistant 3 (OA3) salary level 31 to salary level 60; (f) wasting taxpayer funds for an unnecessary conference; (g) allowing Ms. Wright to put fake appointments on her calendar to leave to pick up her children; (h) blocking a black employee from attending a diversity function despite her presence as OFR

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 2

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

1   representative for the past years, (i) initiating a Washington State Patrol (WSP) investigation, (j)

2   removing Ms. Snell from her supervisory position and demoting her for filing her tort claim; (k)

3   Ms. Hoage's refusal to allow a skilled employee to make presentation because she had a

4   physical deformity. *See* Ms. Snell Declaration (Ms. Snell Dec) ¶¶ 10, 11, 34,-35, 43-49, 73,

5   126-184, 193-198, 200-206; 234-236

6       Ms. Snell filed two Tort Claims. Declaration of Richard H. Wooster (Wooster Dec., ¶1

7   Ex.1. Ms. Snell Dec ¶200). Defendant failed to address the issues stated in second Tort claim

8   raised in her complaint at Paragraph 2.39, noting the ongoing retaliation.

9       Ms. Snell started at DSHS in 2013, joining Office of Financial Recovery (OFR) in 2014 and

10  in 2017, was promoted to Program Manager/Supervisor of Estate Recovery as Revenue Agent 4

11  (RA4), reporting to Ms. Hoage. Ms. Snell Dec. ¶26. Upon taking her new role she found that

12  Ms. Hoage bullied and harassed subordinates. Ms. Hoage gave Ken Washington a punching bag

13  and refused to ask him to remove it after Ms. Snell reported his flailing on it upset staff. *Id.* at

14  12-36.

15      In December 2018, Ms. Snell overhead Ms. Hoage talking loudly on the phone making anti-

16  gay remarks upsetting staff, some of whom are LGBTQ.  An employee asked Ms. Hoage to take

17  her call out of the work area. Ms. Hoage demanded Ms. Snell to discipline the employee for

18  opposing Ms. Hoage's anti-gay tirade. Ms. Snell refused. The following day, Ms. Hoage

19  blocked the complaining employee into her cubicle and yelled at the employee, ignoring the

20  employee's repeated request for Ms. Hoage to leave. Ms. Snell reported these events to OFR

21  Chief Brice Montgomery initiating an investigation.  Ms. Snell shared information regarding

22  Ms. Hoage's conduct with Ms. Wiley after she became OFR Chief in early 2019.  *Id.*

23      Ms. Hoage was removed from the office from December 2018 until June 2019 during the

24  investigation. Ms. Snell provided the investigator information, pointing out Ms. Hoage's

25  homophobic remarks. Ms. Snell told Ms. Wiley and OFR Director, Anmarie Aylward, Ms.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 3

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

1    Hoage's conduct violated both the DSHS anti-discrimination and hostile workplace policies.

2    Ms. Snell had reasonable cause to believe Ms. Hoage' anti-gay slurs and effort to force Ms.

3    Snell to reprimand the employee for complaining violated the WLAD. Ms. Wiley told Ms.

4    Snell, "If you want to work in management, you need to be supportive of management

5    decisions." *Id.* ¶¶ 34-37.   Ms. Wiley denies this claim, but Ms. Wiley refers to Ms. Snell as

6    "pushing the issue about Shawn [Ms. Hoage] not coming back." Ms. Wiley Dep. Pg. 97- ln. 23

7    – pg 100, ln. 10.

8    Contrary Ms. Wiley's assertion (Ms. Wiley Dec ¶3), Ms. Hoage was not cleared of "any

9    inappropriate behavior." Ms. Hoage received a written reprimand. Ms. Snell Dec. ¶¶ 27-29,

10   omitting the homophobic slurs. *Id.* ¶32.

11   Ms. Hoage's return to OFR as a manager outraged OFR employees; so, they sent a petition

12   objecting her return to DSHS Secretary Cheryl Strange. Ms. Snell signed the petition, although

13   told not to by Ms. Wiley. *Id.* at ¶34. Ms. Hoage was placed on alternate assignment through

14   October 2019, while an "eyewash" investigation was conducted with no further action was

15   taken against Ms. Hoage. *Id.* ¶ 38-42.

16   Ms. Hoage retaliated against Ms. Snell, aggressively informing her that she knew what Ms.

17   Snell and everyone else had said about Ms. Hoage, but no action was taken against Ms. Hoage

18   despite Ms. Snell's oral and email complaint to Ms. Wiley, demonstrating contrast with

19   Defendant's actions against Ms. Snell.  Reporting Ms. Hoage's retaliatory behavior gave Ms.

20   Snell reasonable cause to believe those comments violated the WLAD. *Id.* ¶¶ 43-49.

21   August 2019, Ms. Snell applied for and earned the new position of OFR Collection

22   Manager.   Ms. Wiley was not part of the interview panel, ranking Ms. Snell as the top

23   candidate. Ms. Wiley offered Ms. Snell the interview questions before Ms. Snell's interview,

24   but Ms. Snell refused. *Id.* ¶¶ 75, 93-97 Once hired, Ms. Wiley prevented Ms. Snell from filling

25   her vacated position from her promotion and two other vacant supervisor positions, requiring

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA. WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

1   Ms. Snell to act as Collection Manager and three vacant manager positions. *Id.* ₱ 158. Around

2   this time, Ms. Fitzgerald became the overseer of OFR.

3       A new position of Financial Analyst 4 (FA4) was created, supervising clerical staff in OFR

4   and Ms. Wright was selected for the recruitment. Ms. Wright helped craft the position

5   description (Ms. Wright Dec. ₱ 7), contrary to Ms. Wiley's assertion that she "personally

6   created the position description and submitted the proposal to HR for approval to the Class and

7   Compensation Unit (CCU) for determination of…applicable wage rate." Ms. Wiley Dec. ₱7.

8   The position was not announced within the OFR but was posted on the Statewide job board.

9   Only three persons, including Ms. Wright, interviewed for the position. One excluded applicant

10  worked as a Financial Analyst 5 for DSHS who sought a shorter commute. Ms. Wright told Ms.

11  Snell that Ms. Wiley provided Ms. Wright the FA4 interview questions before her interview.

12  Ms. Snell was concerned about the preferential treatment Ms. Wiley gave Ms. Wright.[1]  Ms.

13  Snell Dec. ₱₱53-73

14      The Position Description Form submitted to Class and Compensation establishing Ms.

15  Wright's FA4 position, had Ms. Snell's signature forged with title of supervisor giving the

16  illusion of some oversight and independence on request.   Ms. Wiley signed as Office Chief.

17  The position was approved.  *Id.* ₱₱*83-92.*

18      Ms. Snell became aware that her signature had been forged on the PDF (a class C felony

19  RCW 40.16.030 Offering a False Instrument for Filing or Record) and was increasingly

20  concerned with other issues of Ms. Wiley's mismanagement. On October 7, 2019, while Ms.

21  Wiley was on vacation, Ms. Snell met with Tiffany Womack in Human Resources (HR)

22  bringing forward concerns about the forgery; the boondoggle trip Ms. Wiley scheduled for her

23  and Ms. Snell in New York for which Ms. Wiley encouraged Ms. Snell to bring her family and

24

25

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA. WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

1    make it a vacation; Ms. Wiley's treatment of staff; and blocking Ms. Snell from filling vacant

2    positions requiring Ms. Snell to fill four roles herself.   Womack directed Ms. Snell to present

3    her concerns to Ms. Fitzgerald. Ms. Snell immediately scheduled an appointment with

4    Fitzgerald.  Ms. Snell Dec. ¶¶ 83, 120-126; 135-136;

5        On November 12, 2019, Ms. Snell and Fitzgerald met. Contrary to Fitzgerald's account of

6    the meeting (Fitzgerald Dec. ¶ 8), Ms. Snell laid out the concerns of the forgery on the PDF;

7    Ms. Wiley's favoritism toward Ms. Wright; mistreatment of other employees, including a

8    disabled employee castigated for using Family Medical Leave Act leave; Ms. Wiley blocking

9    the recruitment of employees requiring Ms. Snell to simultaneously fill four different positions;

10   and the waste of the New York conference attended by Ms. Wiley and her family. Ms. Snell

11   Dec. ¶154.  Fitzgerald told Ms. Snell: "If you want to get to higher management, you just need

12   to be supportive of management." *Id.* ¶155.

13       Ms. Wiley praised Ms. Snell with favorable feedback on her performance before Ms. Snell

14   went to HR, *id.* ¶8, Ex. 82, but when Ms. Wiley learned that Ms. Snell advanced concerns about

15   her to HR, Ms. Wiley began encouraging employees to writeup Ms. Snell for alleged improper

16   behavior and sought to revert Ms. Snell from her WMS Collection Manager Position to RA4.

17   Indeed, just 30 minutes after Ms. Wiley learned of Ms. Snell's complaints, she advocated for

18   Ms. Snell's removal from WMS. *Id.* 141-47. Ms. Wiley was instructed to work with Ms. Snell

19   on any perceived issues and document the work. *Id.*

20       However, Ms. Wiley never worked with Ms. Snell. In Ms. Wiley's deposition, she could not

21   recall any coaching or counseling she gave Ms. Snell, Defendants have produced no counselling

22   documentation. *Id.* 148, 152.

23

24   _____

25   [1]Ms. Wiley also gave Ms. Wright a developmental job assignment for which Ms. Wright tried to assert Ms. Snell
     put her in for it.

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA. WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

1   Ms. Snell continued to find issues regarding Ms. Wright she approached Ms. Wiley stating

2   Ms. Wright's behavior was not proper and wasted taxpayer funds, including allowing Ms.

3   Wright to use fake appointments on certain afternoons so she could handle childcare issues; and

4   Ms. Wright not being present to supervise and train a probationary office assistant. Ms. Wiley

5   failed to take any action on the hostile and retaliatory comments of Ms. Hoage. Ms. Wiley

6   alleges that Ms. Snell was meddling in the areas of other Program Managers, but the only units

7   not under Ms. Snell were Accounting and Ms. Wright's team of Administrative Assistants. *Id.*

8   ¶¶ 147-156-178.

9   At the end of January 2020, Ms. Wiley received permission from Fitzgerald to revert Ms.

10  Snell from WMS Collection Manager to her former RA4 position. Yet. Ms. Wiley refused to

11  allow Ms. Snell to return to her desk within Estate Recovery among her subordinates, requiring

12  her to remain alone at her Collection Manager's desk on the opposite side of the building.

13  Fitzgerald refused Ms. Snell's repeated requests to meet with her to discuss the adverse

14  employment actions. *Id.* ¶ 183-95.

15  After Ms. Snell filed her Tort Claim asserting retaliation for opposing behavior violating the

16  WLAD and other matters of public concern, Defendants again took adverse action against Ms.

17  Snell. They removed her from meaningful work, initiated two investigations against her

18  including a Washington State Patrol (WSP) investigation and demoted her from RA4 to a

19  Support Enforcement Officer 2 position. *Id.* ¶¶ 260-242.

20  DSHS's internal HR investigation of Ms. Snell was followed by an identical WSP

21  investigation. Ms. Snell was accused of violating HIPPA because a few patient names, date of

22  admission, and a DSHS number only known to DSHS, were on the bottom of a single email

23  submitted with her Tort Claim for the information contained in the email. Yet DSHS relied

24  upon other emails not included with Ms. Snell's Tort Claim. DSHS demanded Ms. Snell

25

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

1    abandon her lawsuit for any resolution of her Union Grievance, Ms. Snell decided to abandon

2    her Union Grievance process. *Id.*

3        DSHS has a practice of using the WSP to investigate employees who blow the whistle on

4    the waste of government funds, discrimination, and retaliation. The WSP has very limited

5    circumstances where they are authorized to investigate DSHS employees. Wooster Dec. ¶¶ 2-4.

6        WSP is used as shock troops making the target extremely concerned about potential

7    criminal repercussions. Coworkers interviewed are concerned; and giving the limitations in

8    place on the use of WSP, perceives a message that the investigation's target has engaged in a

9    felony, gross misdemeanor, or severe abuse of its DSHS position. WSP investigations of

10   whistleblowers send a strong message to employees about being a whistleblower. Ms. Snell

11   Dec. ¶206.

12       Ms. Snell opposed Ms. Hoage's discriminatory behavior, DSHS's refusal to address the

13   behavior more seriously, raised issues of public concern regarding hiring process, forgery on

14   official documents, wasting government funds, failing to manage employees, and Ms. Wiley's

15   discrimination of employees. Thereafter, Ms. Snell experienced adverse employment actions

16   including: Warnings that her position in management was contingent on the support of

17   management decisions, even if they violated the policies against discrimination or eroded

18   workplace productivity; refusing to allow her to fill vacant supervisor positions; encouraging

19   employees to document complaints against Ms. Snell; fabricating complaints of misconduct;

20   seeking her reversion from her WMS Collection Manager position; reverting her from WMS

21   Collection manager to RA4; ignoring her complaint of retaliation by Ms. Hoage; refusing to

22   meet to discuss her reversion; refusing to allow her to be among her staff in Estate Recovery;

23   starting new investigations of her upon filing her tort claim; bringing in the WSP to conduct the

24   new post-tort claim investigation; and demoting her from a RA4 to a Support Enforcement

25   Officer 2. Each of these actions independently would deter a person from advancing the public

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 8

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

concerns and opposing discrimination; collectively they establish overwhelmingly that they were adverse employment actions intended to deter Plaintiff and others. Ms. Snell Dec. ⁋⁋ 1-253 and Exhibits referenced therein. The Defendants cannot argue in good faith that they have met their burden of proving an absence of questions of fact on material issues.

## III.   ISSUE STATEMENTS

3.1   Has Defendant failed to establish that there are no genuine issues of material fact?

3.2   Did Ms. Snell speak out on matters of public concern?

3.3   Is the law clearly established that a government employee shall not be retaliated against for speaking out on matters of public concern?

3.4   Do the claims asserted by Ms. Snell involve public concern issues that prohibit retaliation under the right to petition for redress and right under the Washington Law Against Discrimination, RCW 49.60 *et seq.* ("WLAD") to be free to oppose unlawful discriminatory conduct?

3.5   Does the forgery of Ms. Snell's signature on a PDF give rise to a right of action for misappropriation of her identity under the common law or RCW 63.50 *et seq.*?

3.6   Should the hearsay allegations of conduct allegedly engaged in by Ms. Snell be stricken?

3.7   Has the State of Washington waived sovereign immunity, and should *Rains v. State* be reversed?

## IV.   EVIDENCE RELIED UPON

4.1   Declaration of Kim Snell and exhibits referenced therein.

4.2   Declaration of Richard H. Wooster and exhibits referenced therein.

4.3   Defendants' Declarations of Una Wiley, Amber Wright, and Judy Fitzgerald.

## V.   AUTHORITY

### A. Summary Judgment Standard.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT Page 9

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

### a. Federal Summary Standard in Employment Cases.

The court must determine whether a genuine issue of material fact exists and not resolve any factual issues on the merits. *Pepper and Tanner, Inc. v. Shamrock Broadcasting, Inc.*, 563 F.2d 391 (9th Cir. 1977). *Sori v. Oxnard School District*, 488 F.2d 579 (9th Cir. 1973, *cert. denied*). Defendants have the burden of proving by uncontroverted facts that there is no genuine issue of material fact. *Phoenix Savings and Loan, Inc. v. Aetna Casualty and Surety Company*, 381 F.2d 945 (4th Cir. 1967).

All of the material evidence and all inferences from that evidence must be viewed most favorably for the non-moving party, *Adickes v. Cress (S.H.) and Company*, 90 U.S. 1598 (1970); *United States v. Diebold, Inc.*, 82 U.S. 993 (1962), and where conflicting inferences may be drawn from the evidence or if reasonable men might reach different conclusions, the motion should be denied—*United States v. Lang*, 466 F.2d 1021 (9th Cir. 1972). A genuine dispute over a material fact exists if sufficient evidence supporting the claimed factual dispute requires a judge or jury to resolve the differing versions of the truth—*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). In discrimination cases, summary judgment should be used sparingly because intentional discrimination is an elusive factual determination, cross-examination can be valuable in ferreting out hidden motives. *Yartzoff v. Thomas*, 809 F.2d at 1377 (9th Cir. 1987). Unwarranted granting summary judgment raises questions about 7th Amendment issues in the invasion of the right to trial by jury. *See Generally*, Curriden, *Putting the Squeeze on Juries*, AMERICAN BAR ASS'N J., Aug. 2000, at 52.

Employers rarely leave written records revealing forbidden motives and usually do not communicate their hidden motives. The notion that an employer's true motivation is a "pure question" of fact reserved to the trier of fact. In *Lowe v. City of Monrovia*, 775 F.2d 998, 1008-09 (9th Cir. 1985) and *Allen v. Scribner*, 812 F.2d 426, 436 (9th Cir. 1987), motivation is a jury question. Treating intent as a factional question in Civil Rights cases is because "[a]n employer's true motive in an employment decision is rarely easy to discern. As we had

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

1    previously noted 'without a searching inquiry into these motives, those [acting for

2    impermissible motives] could easily mask the behavior behind a complex web of post-hock

3    rationalizations.'" *Lowe*, 775 F.2d at 1009.

4        The United States Supreme Court reinforced this need to probe behind the employer's

5    stated reasons. In *Reeves v. Sanderson Plumbing Products, Inc.* 530 U.S. 133, 143, 120 S.Ct.

6    2097, 147 L.Ed.2d 105 (2000), the Court, in an ADEA case, held finding employer's stated

7    reason for firing an employee is false is sufficient for a jury to conclude, without more, that an

8    unlawful discriminatory motive prompted adverse action. "Proof that the defendant's

9    explanation is unworthy of credence is [a] form of circumstantial evidence that is probative of

10   intentional discrimination, and it may be quite persuasive." *Reeves*, 530 U.S. at 147, 120 S.Ct.

11   2097.

12           In evaluating motions for summary judgment in the context of
             employment discrimination, we have emphasized the importance of
13           zealously guarding an employee's right to a full trial since
             discrimination claims are frequently difficult to prove without a full
14           airing of the evidence and an opportunity to evaluate the credibility of
             the witnesses. *See, e.g.*, *Schnidrig*, 80 F.3d at 1410-11; *Lam*, 40 F.3d at
15           1563; *Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d
             1104, 1111 (9th Cir.1991). As the Supreme Court has stated, "The real
16           social impact of workplace behavior often depends on a constellation of
             surrounding circumstances, expectations, and relationships which are
17           not fully captured by a simple recitation of the words used or the
             physical acts performed." *Oncale v. Sundowner Offshore Serv., Inc.*,
18           523 U.S. 75, 81-82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). As a result,
             when a court too readily grants summary judgment, it runs the risk of
19           providing a protective shield for discriminatory behavior that our
             society has determined must be extirpated.
20

21   *McGinest v. GTE Service Corp.* 360 F.3d 1103, 1112 (9th Cir.2004).

22                **b.  State Standard on Summary Judgment in Employment Cases.**

23       Washington courts treat the issues of summary judgment the same. On a motion for

24   summary judgment, the facts are viewed in the light most favorable to the non-moving party.

25   *Cox v. Malcolm*, 60 Wn.App. 894, 897, 808 P.2d 758 (1991). A motion for summary judgment

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 11

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

is granted when there is no genuine issue regarding any material fact, and the moving party is entitled to judgment as a matter of law. *Id.* (citing *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 565 P.2d 1030 (1982)). A material fact is defined as one upon which the outcome of the litigation depends. *Id.*

The moving party must show that there is no genuine issue of material fact; however, once the moving party has met its burden, the burden then shifts to the non-moving party, who must show that there is a genuine issue of material fact. *Id.* Summary Judgment motions in civil rights cases have increased despite the legal authority and decisions advising caution in granting summary judgment in cases involving complex factual issues. Defendants' sophistication in not announcing or documenting their unlawful motives, and the reliance of pretext analysis makes summary judgments rare.[2] Due to the success of anti-discrimination laws and the public officials' awareness of First Amendment implications of adverse retaliatory employment actions, modern civil rights cases increasingly rely on showing the Defendants' proffered explanation is pretext or otherwise unworthy of belief. Plaintiff can rebut the employer's stated "legitimate explanation" for adverse employment actions by "directly persuading the court that a discriminatory reason more likely motivated the employer[,] or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (citation omitted), quoted in *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1066 (2003) (finding that timing of the adverse employment actions is the strong inference that the action had a retaliatory motive). As detailed in this Memorandum and the supporting declarations, there are numerous questions of fact raised by the treatment of Ms. Snell, and comments to her about needing to support

---

[2] *Note: What Would a Reasonable Jury Do? Jury Verdicts Following Summary Judgment Reversals*, 115 COLUM. L. REV. 1255 (2015) (noting a high prevalence of success by Plaintiff's at trial following reversal of summary judgment).

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 12

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

1  management and stop opposing unlawful discrimination. The timing of Defendants' adverse

2  employment actions give rise to solid inferences that the adverse employment actions were

3  motivated by her protected conduct. Substantial questions regarding if the alleged reasons

4  advanced for adverse employment actions are merely pretexts for the true and unlawful

5  motivation.

6  **B. Questions of Fact Are Present Regarding Defendant Ms. Wiley's and Fitzgerald's Motivation for the Adverse Employment Actions Taken Against Ms. Snell.**

7

8  The First Amendment, the WLAD, and RCW 40.40 (State Employee Whistleblower)

9  prohibit government managers and employers from retaliating for exercising their right of free

10  speech, the right to position or oppose conduct that the employee reasonably believes violates

11  the WLAD, and the right to raise matters of public concern or questions of improper

12  government actions.

13  **a. Free Speech and Right of Petition Claims.**

14  The First Amendment is enforced under 42 U.S.C. §1983. Speech is a matter of public

15  concern concerning any political, social, or other community concern. *Johnson v. Multnomah

16  Cnty.,* 48 F.3d 420, 422 (9th Cir.1995) (citing *Connick v. Myers*, 461 U.S. 138, 146, 103 S. Ct.

17

18  1684, 1690, 75 L. Ed. 2d 708 (1983)) (determining a matter of public concern is when it can be

19  "fairly considered to relate to any matter of political, social, or other concern to the

20  community"). For example, "[e]xposing governmental inefficiency and misconduct is a matter

21  of considerable significance." *Garcetti v. Ceballos*, 547 U.S. 410, 425, 126 S. Ct. 1951, 1958,

22  164 L. Ed. 2d 689 (2006); *see cf.* 461 U.S. at 148 (requiring speech to inform the public or bring

23  to light actual or potential wrongdoing or breach of public trust).

24

25

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 13

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

The speech must demonstrate more than a mere personal grievance. *Connick*, 461 U.S. at 147–48 (holding federal court is not an appropriate forum "to review the wisdom of a personnel decision taken by a public agency" when the employee speaks "upon matters only of personal interest, absent the most unusual circumstances"). However, when employees speak on matters of public concern, "they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti*, 547 U.S. at 419. The determination of whether the speech is a matter of public concern must be determined by the (1) content, (2) form, and (3) context of a given statement, as revealed by the whole record. *Connick*, 461 U.S. at 148 The time, place, and matter are also relevant factors; however, employees need not spread their views before the public. *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 416, 99 S. Ct. 693, 697, 58 L. Ed. 2d 619 (1979) (holding First Amendment protection applies when public employees communicate privately with the employer rather than in a public forum.). The court also considers the intent of the speech or the "point" of the employee's speech. *Binkley v. City of Tacoma*, 114 Wash.2d 373, 384–85,787 P.2d 1366, 1374, (1990) ("[L]ook[ing] at the *point* of Binkley's [plaintiff's] speech to determine whether he intended to raise an issue of public concern, or merely intended to further a personal interest.").

Ms. Snell opposed Ms. Hoage's homophobic remarks, including physical threats, efforts to discipline an employee for objecting to such conduct, and the superficial investigations into those issues. Ms. Snell raised concerns regarding the PDF forgery, granting substantial pay increase to Ms. Wright and making it appear there was some independent support for the action rather than being the acts of Ms. Wiley and Ms. Wright; waste of public funds by the New York trip; allowing fake appointments on Ms. Wright's calendar; the failure to train employees; violating recruitment processes; and not acting on retaliation complaints. These are matters of

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 14

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

public concern, and Ms. Snell's speech on those issues are protected acts. The only personal interest Ms. Snell had related to her forged signature and her desire to work in a non-discriminatory environment. Her concerns were all matters of public concern. Ms. Snell Dec. ⁋⁋1-253.

The petition clause protects the right of individuals to appeal to courts and other forums established by the government for the resolution of legal disputes. "[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government." *Sure–Tan, Inc. v. NLRB,* 467 U.S. 883, 896–897, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984); *see BE & K Constr. Co. v. NLRB,* 536 U.S. 516, 525, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002); *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983). Retaliation by a government employer for a public employee's exercise of the right of access to the courts may implicate the protections of the petition clause. In *Borough of Duryea, Pa. v. Guarnieri,* 564 U.S. 379, 387, 131 S.Ct. 2488 (2011), the Supreme Court viewed this precise issue and applied the analysis of Free Speech cases to the right of petition involving public employees. Ms. Snell's tort claim and lawsuit raising matters of public concern triggered the right of protection against retaliation. Ms. Snell Dec. ⁋⁋ 195-203.

Defendants' motion is premised on the pretext that they had legitimate, non-retaliatory motives for their adverse employment actions against Ms. Snell. That argument is undermined by relying upon unsubstantiated hearsay and, in many instances, double and triple hearsay.

### b. Plaintiff's WLAD Retaliation Claim

Plaintiff asserts Defendant DSHS violated the WLAD by retaliating against Ms. Snell by removing her from the Collection Manager Position, telling her not to speak against management action if she wanted to stay in management, attempting to build a record against

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 15

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

her, placing her under investigation, removing her from productive work and demoting her from RA4 to Support Enforcement Officer 2 in reaction to her opposition to discriminatory conduct being condoned by DSHS, Ms. Snell Dec. ¶236, while it turned a blind eye to the conduct of Ms. Hoage and Ms. Wiley. Ms. Snell Dec. ¶¶ 12-49; 88-183.

Defendants ignore Plaintiff's clearly articulated claims for retaliation under the WLAD specified in her Complaint ¶¶ 2.10; 2.11; 2.12; 2.14; 2.22; 2.32; 2.35; 2.39; 2.42. Instead, Defendant says: "Plaintiff Cannot Prove The Elements Of Her WLAD Claim." Dkt. 32 at 17-21, *Defendants' Motion*. Asserting Ms. Snell did not identify her protected class, she has no comparators, or what favorable terms of employment she was denied—misapprehends Plaintiff's Complaint asserting retaliation. However, Ms. Hoage and Ms. Wiley are comparators, as are other employees not demoted for intentional HIPPA violations. Ms. Snell Dec. ¶¶239-242.

The WLAD mandates liberal construction of its provisions. RCW 49.60.020. Washington courts have also stated that the purpose of the WLAD is "to deter and eradicate discrimination in Washington—a public policy of the highest priority." *Lodis v. Corbis Holdings, Inc.*, 172 Wn.App. 835, 847–48 292 P.3d 779 (2013).

The WLAD extends broad protections to "any person" engaging in statutorily protected activity from retaliation by an employer or "other person." RCW 49.60.210(1) provides, "(1) It is an unfair practice for any employer, employment agency, labor union, or another person to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter."

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

1
2
3
4
5
6
7
8
9
10

   To establish a prima facie case of retaliation under RCW 49.60.210(1), a plaintiff must show that (1) he or she engaged in statutorily protected activity, (2) he or she suffered an adverse employment action, and (3) there was a causal link between his or her activity and the other person's adverse action. The first element describes opposition to "any practices forbidden by" Chapter 49.60 RCW. When a person reasonably believes he or she is opposing discriminatory practices, RCW 49.60.210(1) protects that person whether or not the practice is actually discriminatory. A plaintiff proves causation by showing that retaliation was a substantial factor motivating the adverse employment action. If the plaintiff establishes a prima facie case, then the defendant may rebut the claim by presenting evidence of a legitimate nondiscriminatory reason for the adverse action. This shifts the burden back to the plaintiff to prove that the employer's reason is pretextual. The trier of fact must then " choose between inferences when the record contains reasonable but competing inferences of both discriminatory and nondiscriminatory actions."

*Currier v. Northland Services, Inc.*, 182 Wn.App. 733, 742–43, 332 P.3d 1006, 1011 (2014) (citations omitted).

11
12
13
14
15
16

   A retaliatory motive need not be the employer's sole or principal reason for the discharge so long as the employee establishes that retaliation was a substantial factor. *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 68–69, 821 P.2d 18 (1991). Supervisors may be personally liable for conduct violating the WLAD, including retaliation. *Renz v. Spokane Eye Clinic, P.S.*, 114 Wn.App. 611, 617, 60 P.3d 106, 109, (2002).

17
18
19
20
21
22
23
24
25

   Adverse employment action involves a change in employment that is more than an inconvenience or alteration of one's job responsibilities. *Alonso v. Qwest Commc'ns Co., LLC,* 178 Wn.App. 734, 746, 315 P.3d 610 (2013). It includes a demotion or adverse transfer, or a hostile work environment. *Kirby v. City of Tacoma,* 124 Wn.App. 454, 465, 98 P.3d 827 (2004) (quoting *Robel v. Roundup Corp.,* 148 Wn.2d 35, 74 n. 24, 59 P.3d 611 (2002)). The employee must show that a reasonable employee would have found the challenged action materially adverse, meaning that it would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (quoting *Rochon v. Gonzales,* 438 F.3d 1211, 1219 (2006)).

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA. WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

1  "Adverse employment actions include attempting to build a record against the Plaintiff. *Hybert*
2  *v. Hearst Corp.,* 900 F.2d 1050, 1054 (7th Cir. 1990) (ADEA case). The Ninth Circuit has
3  reiterated that an action constitutes an adverse employment action if it materially affects an
4  employee's "compensation, terms, conditions, or privileges of employment." *Chuang v. Univ.*
5  *of Cal. David, Bd. of Trs.*, 225 F.3d 1115, 1126 (9th Cir. 2000)
6  (quoting 42 U.S.C. § 2000e-2(a)(1)). The court interprets adverse employment action broadly,
7  *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000), and observes that "assigning more, or
8  more burdensome, work responsibilities, is an adverse employment action," *Davis v. Team*
9  *Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

10  Under both Title VII and WLAD, the plaintiff's opposition can constitute a "protected
11  activity" even if the employer's practices were not discriminatory, so long as Employee's belief
12  in the unlawfulness of those practices was reasonable. *See, e.g., Maner v. Dignity Health*, 9
13  F.4th 1114, 1127 (9th Cir. 2021) ("[O]ur precedents have long recognized that the statute
14  protects an employee who opposes employer conduct in the mistaken but reasonable belief that
15  the conduct is unlawful."); *Ellis v. City of Seattle*, 142 Wn. 2d 450, 460, 13 P.3rd 1065 (2000)
16  ("In the retaliatory discharge context, Washington law has recognized a cause of action where
17  an employee has an objectively reasonable belief an employer has violated the law.").

18  "To establish a causal connection between opposition to employer conduct and a
19  retaliatory action, the plaintiff must show 'the defendant was aware that the plaintiff had
20  engaged in protected activity.'" *Maner*, 9 F.4th at 1127 (quoting *Raad v. Fairbanks N. Star*
21  *Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003)). Both the Ninth Circuit and the
22  Washington Supreme Court have "adopted the 'knew or suspected' standard" for determining
23  whether defendants possessed the requisite awareness. *Cornwell v. Microsoft Corp.*, 192 Wash.
24  2d 403, 417, 430 P.3d 229 (2018). "[A]as long as an employee presents evidence 'suggest[ing]

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 18

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

a *causal connection* between the protected activity and the subsequent adverse action sufficient to defeat summary judgment,' that employee has made a prima facie case of retaliation under WLAD." *Id.* at 420.

Ms. Snell engaged in protected conduct, opposing (1) Ms. Hoage's homophobic slurs and retaliation; (2) whitewashing of Ms. Hoage's discrimination; (3) denying an employee a public speaking opportunity because of her physical deformity; (4) Ms. Hoage's retaliation against Ms. Snell; (5) Ms. Wiley blocking a black employee from attending a diversity conference; (6) Ms. Wiley harassing an employee for needing FMLA because of his disability; and (7) other unethical and unfair treatment of employees. Ms. Snell Dec. ¶¶ 12—49; 52, 110-126; 166, 193,

Ms. Snell endured all kinds of retaliation: From being told that if she wanted to stay in management, she must support management decisions ignoring discrimination and then receiving a demotion from her WMS job and her RA4 job; being subjected to a WSP investigation that led to a demotion from an RA4 to Support Enforcement Officer 2 – just to name a few acts of retaliation. Ms. Snell Dec. 1-253.

A causal link from protected acts to retaliation is shown by both direct and circumstantial evidence. Direct evidence includes Ms. Wiley and Fitzgerald telling Ms. Snell that if she wants to stay in management, she must support management decisions when she told them their actions violated DSHS anti-discrimination and workplace policies. Ms. Snell Dec. ¶ Circumstantial evidence of the timing of the adverse actions closely follows the protected activities. Ms. Snell was blocked from filing vacant positions when she became Collection Manager. Ms. Snell went to Human Resources on October 7, 2019, and Ms. Wiley sought Ms. Snell's removal from her WMS Collection Manager job on October 28, 2019, and immediately

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 19

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

started building a record against Ms. Snell. Ms. Snell Dec. ℙ 119-20; 127-153. Immediately after Ms. Snell filed her Tort Claim, she was placed under a new investigation instigated by Ms. Wiley and escalated to the WSP. *Id.* ℙℙ *200-243*

### c. The Cat's Paw Theory Applies to the First Amendment Claims and the WLAD Retaliation Claims.

"In employment discrimination cases, the "cat's paw" theory refers to liability for actions of an employee without hiring or firing authority, who influences the decision maker because of an unlawful discriminatory animus, by feeding the decision maker misinformation or failing to reveal relevant information." § 4:22 "CAT'S PAW" THEORY, 13A N.Y. PRAC. EMP. L. IN N.Y. (2d ed.). Several Circuits, including the 9th Circuit have either held or assumed that cat's paw liability would be available under § 1983. *E.g., Gilbrook v. City of Westminster*, 177 F.3d 839 (9th Cir. 1999); *Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797 (9th Cir. 2009); *Campion, Barrow & Assocs., Inc. v. City of Springfield, Ill.*, 559 F.3d 765, 771 (7th Cir.2009); *Arendale v. City of Memphis*, 519 F.3d 587, 604 n. 13 (6th Cir.2008); *Dedmon v. Staley,* 315 F.3d 948, 949 n.2 (8th Cir.2003).

A cat's paw instruction is appropriate in a WLAD retaliation claim. *Boyd v. State, Dept. of Social and Health Services*, 187 Wn.App. 1, 19–20, 349 P.3d 864, 873, (2015).

Defendant Ms. Wiley and Fitzgerald cannot insulate themselves from liability for the adverse employment actions they set in motion by claiming "some other dude did it." Ms. Wiley demanded Ms. Snell's reversion Ms. Snell Dec. ℙℙ 141-142, 145-46, Ex. 45; and Fitzgerald delivered. Ms. Snell Dec. ℙ ℙ 183-84, Ex. 55, 56. Womack Dep. pg. 34, lns. 4-12, pg. 35, ln. 2-12. Fitzgerald also blocked any investigation into Ms. Wiley despite Human Resources advice to investigate. *Id.* at 21 lns. 1-19; 35, ln. 21; 43 lns. 16 to pg. 49, ln. 17.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 20

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

**C. Plaintiff's First Amendment Rights to be Free from Retaliation for Protected Speech and the Right of Petition Are Clearly Established and Qualified Immunity is Inapplicable in This Case.**

Plaintiff sued both Ms. Wiley and Fitzgerald in their individual capacity for adverse employment actions taken under color of law after she raised matters of public concern about matters occurring in the OFR, including LGBTQ slurs and other forms of discrimination, improper hiring practices, waste of public funds, forgery of official documents, FMLA interference, and retaliation. Ms. Snell shows a pattern and practice of Free Speech retaliation.

Ms. Snell must demonstrate that her constitutional rights were clearly established at the time of the violation. For a constitutional right to be established, "the contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right" at the time of his conduct. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "This is not to say that an official action is protected by qualified immunity unless the action in question has previously been held unlawful, *see Mitchell* v. *Forsyth,* 472 U.S. 511, 535, n.12, 105 S.Ct. 2806, 86 L.Ed.2d 411; but it is to say that in the light of pre-existing law, the unlawfulness must be apparent." *Id.*

The right of public employees to speak out on matters of public concern has been clearly established for over fifty years. DSHS is well aware of the prohibitions against retaliation and is subject to a Court Order requiring training on this issue at Western State Hospital. Wooster Dec. ¶ 3. Ex. 3.

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256, (2006). Further, "[t]he right to speak freely without retaliation has long been clearly established for the purposes of qualified immunity." *Aydelotte v. Town of Skykomish*,

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

2020 WL 4347261, at *5 (W.D. Wash. July 29, 2020), *appeal dismissed sub nom. Aydelotte v. Deschenmaeker*, 2020 WL 8571068 (9th Cir. Dec. 8, 2020).

Accordingly, a reasonable official would have known that unfavorably transferring Plaintiff with retaliatory intent violates the First Amendment. *See Quantz v. Edwards*, 264 F. App'x 625, 628 (9th Cir. 2008) ("A transfer of job duties alone can constitute an adverse employment action as long as it is reasonably likely to deter employees from engaging in protected activity" A gap of as much as 11 months between protected speech and an adverse employment action can support an inference of retaliation. *See Coszalter v. City of Salem*, 320 F.3d 968, 977-78 (9th Cir.2003) (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir.1983). Ms. Wiley and Fitzgerald would not be entitled to qualified immunity because it was well established that retaliating against an employee for engaging in protected speech by transferring removing her from her WMS Collection Manager and other adverse employment actions were unconstitutional. *See Saucier v. Katz*, 533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Ray*, 217 F.3d at 1241, 1243; *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).

Additionally, the employee's speech must address a matter of public concern. "To address a matter of public concern, the content of the [officer's] speech must involve 'issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government.'" *Desrochers v. City of San Bernardino*, 572 F.3d 703, 710 (2009) (quoting *McKinley*, 705 F.2d at 1114); *see, e.g., Robinson v. York*, 566 F.3d 817, 822 (9th Cir. 2009) (reporting on instances of possible corruption is a matter of public concern); *McKinley*, 705 F.2d at 1114 (speech dealing "with the rate of compensation for members of the city's police force and, more generally, with the

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA. WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

working relationship between the police union and elected city officials" involved matters of public concern).

All of Ms. Snell's speech shining light upon Ms. Wiley's improprieties were protected speech. Like the Washington Ferry Systems' Chief Engineer, in *Marable v. Nitchman,* 511 F.3d 924, 932–33 (9th Cir.2007), Ms. Snell's job was to collect money for DSHS, it was not her job to supervise Ms. Wiley and Fitzgerald.

### D.   The Court Should Retain Jurisdiction over the State Law Claims.

The Court should reject the Defendants' demand to dismiss Plaintiff's state claims if it is inclined to dismiss Plaintiff's 42 U.S.C §1983 claims. The decision of whether to continue to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed lies within the district court's discretion. *See* 28 U.S.C. § 1367(c)(3); *Foster v. Wilson*, 504 F.3d 1046, 1051 (9th Cir. 2007). Dismissal of the remaining state law claims is not "mandatory." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, n.7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Retention of state law claims following the dismissal of the federal claim may be appropriate and is justified by considerations of judicial economy, convenience, and fairness to the litigants. *United Mine Workers of America v. Gibbs*, 86 S.Ct. 1130, 1139, 383 U.S. 715, 726 (1966). Those factors play heavily in this case: The parties have a trial date of May 30, 2023. If the State claims are remanded to State Court, the trial on those claims will be pushed out for years. Undoubtedly, there would be an appeal for the dismissal of the First Amendment claims. That would set into motion a divergent set of legal proceedings in State and Federal Court. It would be unfair for the Plaintiff to have to litigate her State law claims and then return to litigate her federal claims if her appeal is successful on the federal claims relying upon much of the same evidence in two forums. This would significantly increase the expense

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

1   for Plaintiff having to try the same case twice. This Court should retain jurisdiction over the

2   State's claims and let the plaintiff have her day in court.

3   **E. Ms. Snell Is No Longer Pursuing Claims for Negligent Hiring or Retention of**
    **Ms. Wiley.**

4

5   Ms. Snell is no longer pursuing negligent hiring or retention claims.

6   **F. Defendant's Forgery of Plaintiff's Signature on the Management Analyst 4**
    **Position Description Supports Her Claims for Violation of Her Right to Be Free**
7   **from Misappropriation of Her Identity.**

8   Plaintiff's signature was forged onto the PDF used elevating Ms. Wright from a salary

9   level 31 to a level 58. Defendant claims that the forged document was of no effect because Ms.

10  Wiley was not the appointing authority. This ignores the fact that the job creation went through

11  and underscored questions of fact.   This was done without Ms. Snell's consent to benefit

12  someone by creating the false appearance of oversight on the PDF. Ms. Snell has a property

13  right to her signature that is recognized by RCW 63.60 *et seq.* "(1) Every individual or

14  personality has a property right in using his or her name, voice, signature..." RCW

15  63.60.030(1). The terms "goods, merchandise, or products" are not defined anywhere in the

16  statute, and no case law exists. If the statute does not define a term, the court may look to a

17  dictionary for its ordinary meaning. *Immelt v. Bonneville*, 2014 WL 2960422, at *1–6

18  (Wash.App. Div. 1,2014). In *Immelt*, it was held that a real estate appraisal is such a good that

19  the protection applied to a signature. There is no reason why the protection should not extend to

20  a forgery fraudulently used to boost the pay of a government employee. Ms. Wiley's hearsay

21  assertions that the forged signature on the FA4 PDF resulted from an office assistant when

22  collating a group of PDFs should be stricken. Yet a review of the document shows not an

23  unrelated form but a continuous MA4 description. The collation error theory does not explain

24

25

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 24

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

1  the forgery. "The words 'forge,' 'forgery,' 'forged' and 'forging,' shall include false making,

2  *** of a genuine instrument in whole or in part, the false making or counterfeiting of the

3  signature of a party or witness, real or fictitious, ***." *State v. Lutes*, 38 Wash.2d 475, 478, 230

4  P.2d 786 (1951). This forgery was a Class C Felonies RCW 9A.60.020; RCW 40.16.030. RCW

5  9.35.020. These crimes make Ms. Wiley liable to Ms. Snell for liquidated damages under RCW

6  63.60 *et seq* and RCW 9.35.020(7) "A person who violates this section is liable for civil

7  damages of one thousand dollars or actual damages, whichever is greater, including costs to

8  repair the victim's credit record, and reasonable attorneys' fees as determined by the court."

9  RCW 9.35.020(7).

10

11        **G. Ms. Snell Qualifies for Whistleblower Protection for Bringing Forth
          Information about Waste of Government Funds; Forgery of Her Name on a
12        PDF; and Interference with the Management Analyst 4 Recruitment Process.**

13        Ms. Snell met with Ms. Fitzgerald, the Assistant Secretary of DSHS, to report her good

14  faith concerns about Ms. Wiley's actions covered under RCW 42.40.020, including but not

15  limited to the forgery thereby triggering the anti-retaliation protections of 42.40.030 and

16  42.40.050. Following her reports, she was subjected to retaliation, as noted herein. The

17  whistleblower retaliation statute, RCW 42.40.050(1)(a), provides, "[a]ny person who is a

18  whistleblower, as defined in RCW 42.40.020, and who has been subjected to workplace reprisal

19  or retaliatory action is presumed to have established a cause of action for the remedies provided

20  under chapter 49.60 RCW." To establish a *prima facie* case of retaliation, an employee must

21  show that (1) she engaged in a statutorily protected activity (filing a whistleblower complaint),

22  (2) the employer took an adverse employment action, and (3) the adverse action was caused by

23  the employee's activity. *Milligan v. Thompson*, 110 Wn. App. 628, 638, 42 P.3d 418 (2002).

24  The same facts supporting Ms. Snell's First Amendment claims support her whistleblower

25  claims.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 25

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

1

### H.   The Court Should Strike Hearsay Relied Upon by Defendants in Its Motion.

2     Hearsay is inadmissible evidence. Fed. R. Evid. 801. Under the Federal Rules of

3   Evidence, hearsay is defined as any "statement, other than one made by the declarant while

4   testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

5   *Orr v. Bank of America, NT&SA*, 285 F.3d 764,778 (9th Cir. 2002). Furthermore, "[w]hether

6   evidence is offered as circumstantial evidence as opposed to direct evidence has nothing to do

7   with whether it constitutes inadmissible hearsay. *Id.* at 779 (quoting *United States v. Jefferson*,

8   925 F.2d 1242, 1253 (10th Cir. 1991). "Only admissible evidence may be considered in

9   deciding a motion for summary judgment." *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d

10   975, 988 (9th Cir. 2006).

11     In this case, several parts of Defendants' declarations should be stricken for hearsay

12   statements. As for Ms. Wiley's Declaration, the following paragraphs should be stricken

13   because they are hearsay statements: ¶4, ¶5, ¶9, ¶ 15, ¶16, ¶17, ¶18, and ¶20. Judy Fitzgerald's

14   Declaration, the following paragraphs should be stricken because they are hearsay statements: ¶

15   6, ¶8, ¶9; as for Ms. Wright's Declaration, the following paragraph should be stricken because it

16   is a hearsay statement: ¶9.

17     Additionally, Exhibit B to Ms. Wiley's Declaration should be stricken completely

18   because Ms. Wiley's Communication Log is all hearsay or double hearsay. Ms. Wiley's

19   accusations are her account of stories she allegedly heard from employees coming into her

20   office and telling her about a rumor, or they are conversations Ms. Wiley had with another

21   person. These are all statements made out of court offered to prove the truth of the matter

22   asserted – that these complaints against Ms. Snell are true.

23     ### I.   Defendants' Claims No Liability Attaches for Ms. Wiley or Fitzgerald's Conduct Should be Rejected.

24

25

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

1    Defendant adds in a paragraph at the end of the Motion that DSHS cannot be vicariously

2    liable for the actions of Ms. Wiley and Fitzgerald. But an employer is liable when the

3    employer's supervisors violate the WLAD. *Cornwell v. Microsoft Corporation*, 192 Wash.2d

4    403, 430 P.3d 229, (2018). Washington State has Abandoned Its Sovereign Immunity in RCW

5    4.92.140-.170, and *Rains v. State*, 100 Wn.2d 660, 660–68674 P.2d 165, 165–71, (1983)

6    holding that waiver does not extend to 42 U.S.C. §1983 claims was wrongly decided.

7                            **VI.    CONCLUSION**

8    Summary Judgment should be denied, and this case should proceed to trial. Plaintiff has

9    asserted viable claims, and the Defendants have failed to establish that the material facts are not

10   disputed. Defendants are not entitled to qualified immunity, and the right of public employees to

11   speak on matters of public concern is clearly established. A jury should decide the Plaintiff's

12   claims.

13   DATED this _20_ day of March, 2023, I certify that this pleading contains 8,366

14   words, excluding captions and signature block, less than the 8,400 words specified in LCR,

15   7(e).

16
17                                    KRAM & WOOSTER, P.S.

18

19                                    /s/Richard H. Wooster_____
                                      Richard H. Wooster, WSBA #13752
20                                    Attorneys for Plaintiff

21                            **PROOF OF SERVICE**

22   I certify that I served a copy of this document on all parties or their counsel of record on

23   the date below as follows:

24   ☐ US Mail Postage Prepaid

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile

1    ☒ Electronic Mail/Filing

2    ☐ ABC/Legal Messenger

3    ☐ State Campus Delivery

4    ☐ Hand delivered by _____

5    Michelle.hansen@atg.wa.gov

6    I certify under penalty of perjury under the laws of the state of Washington that the

7    foregoing is true and correct.

8    DATED this _____ day of March 2023 Tacoma, Washington.

9                                          /s/Connie DeChaux
                                           Connie DeChaux
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 28

Law Offices of
**Kram & Wooster, P.S.**
1901 South I Street
TACOMA, WASHINGTON 98405
(253) 572-4161 Tacoma
(253) 272-7929
(253) 572-4167 Facsimile